```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------  X
STEPHEN HILTON,                                             :
                                                            :
                                                            :    MEMORANDUM DECISION AND
                            Plaintiff,                      :    ORDER
                                                            :
           - against -                                      :    24-cv-7363 (BMC)
                                                            :
                                                            :
UNITED STATES OF AMERICA,                                   :
                                                            :
                            Defendant.                      :
----------------------------------------------------------  X
```

**COGAN**, District Judge.

Plaintiff, Stephen Hilton, brings this action seeking a tax refund of $1,713,693 – the amount he alleges his former employer erroneously withheld from him. The Government argues that Hilton's failure to file his tax return according to the proper forms precludes this Court's jurisdiction over his claim. Even though strict adherence to the formal requirements of filing a tax return is not necessary, I find that Hilton did not set forth sufficient information about his refund request to apprise the IRS of his claim. Because such "duly filed" information is a prerequisite to subject matter jurisdiction in a tax refund claim, the Government's motion to dismiss under Rule 12(h)(3) is granted, and the Government's motion for summary judgment is denied as moot.

## SUMMARY OF COMPLAINT

The case originates in July 2018, when Hilton was terminated by his former company. Hilton, believing his termination to be wrongful, brought a breach of contract claim against his former employer. Hilton and the company eventually reached a settlement agreement, and as part of that agreement, the company agreed to pay him a settlement payment. Under 26 U.S.C. § 4999, the company was required to withhold 20% of a portion of that payment, defined as an "excess parachute payment" under 26 U.S.C. § 280G. The company eventually withheld

$1,960,245 from the settlement payment. Hilton disputed that this amount in withholding was accurate, arguing that the company had considered more of the payment as an "excess parachute payment" than it was obligated to, and that it owed him $1,713,693.

Hilton tried to recover that amount in his 2019 tax return. He entered $1,713,693 on line 18e of Form 1040 as a "refundable credit." He also attached Form 8275 to his return, with an explanation of his claim and a "detailed letter" from his attorney setting forth the factual and legal basis for his refund claim. In November 2022, the IRS disallowed his refund claim and in December 2022, Hilton disputed the November disallowance letter. The IRS responded by letter in July, 2023, noting that it had considered his claim, but that based on the information provided, it could not allow any of it.

Having exhausted IRS review, Hilton then commenced the present action against the Government, seeking a refund of $1,713,693 in improperly withheld taxes. The Government moves to dismiss the case for lack of subject matter jurisdiction, or in the alternative, for summary judgment.

## DISCUSSION

**I.  Legal Standard**

Rule 12(h)(3) provides that if a "court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). "Generally, '[m]otions brought pursuant to Rule 12(h)(3) are subject to the same standard as motions to dismiss for want of subject matter jurisdiction brought pursuant to Rule 12(b)(1).'" Canadian St. Regis Band of Mohawk Indians v. New York, 388 F. Supp. 2d 25, 29 (N.D.N.Y. 2005) (quoting Correspondent Servs. Corp. v. JVW Inv., Ltd., No. 99-cv-8934, 2004 WL 2181087, at *5 (S.D.N.Y. Sept. 29, 2004)). "Once subject matter jurisdiction is challenged, the burden of establishing jurisdiction

rests with the party asserting that it exists . . . . by a preponderance of the evidence." Correspondent Servs. Corp., 2004 WL 2181087, at *6 (citing Thomson v. Gaskill, 315 U.S. 442, 446 (1942); Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000); APWU v. Potter, 343 F.3d 619, 623 (2d Cir. 2003)), aff'd, 442 F.3d 767 (2d Cir. 2006). "In deciding whether the non-movant has met this burden of proof, 'a court must accept as true all material factual allegations in the complaint.'" Canadian St. Regis Band of Mohawk Indians, 388 F. Supp. 2d at 29 (quoting Peterson v. Cont'l Airlines, 970 F.Supp. 246, 249 (S.D.N.Y. 1997)). "However, argumentative inferences favorable to the party asserting jurisdiction should not be drawn." Id. If there are disputed jurisdictional fact issues, the court "must consult evidence outside the pleadings" if resolution of those facts "may result in the dismissal of the complaint for want of jurisdiction." Id. at 29-30 (cleaned up) (quoting Robinson v. Gov't of Malaysia, 269 F.3d 133, 140-141 n.6 (2d Cir. 2001)).

## II.   Hilton Has Not Duly Filed His Claim For Refund

It is well-established that "[t]he United States, as sovereign, is immune from suit," unless Congress expressly waives that immunity. United States v. Mitchell, 445 U.S. 535, 538 (1980). Indeed, "in any suit in which the United States is a defendant, a waiver of sovereign immunity with respect to the claim is a prerequisite to subject matter jurisdiction." Lunney v. United States, 319 F.3d 550, 554 (2d Cir. 2003) (quoting Up State Fed. Credit Union v. Walker, 198 F.3d 372, 374 (2d Cir. 1999)). Congress has waived sovereign immunity for taxpayers bringing civil actions against the United States for any tax allegedly erroneously collected. 28 U.S.C. § 1346. This waiver is qualified by 26 U.S.C. § 7422(a), which provides that a taxpayer cannot recover any tax allegedly erroneously collected until a claim for a refund has been "duly filed" according to the relevant tax laws and regulations.

Generally, "if a taxpayer is required to file a claim for credit or refund using a particular form, then the claim, together with appropriate supporting evidence, shall be filed in a manner consistent with such form, form instructions, publications, or other guidance found on the IRS.gov Web site." Treas. Reg. 301.6402-2(a)(2).  However, "[n]o particular format is required to satisfy section 7422(a); an 'informal' refund claim will suffice, provided that it 'alert[s] the IRS that the taxpayer seeks a refund and . . . indicate[s] the grounds upon which the taxpayer's claim is based.'"  Donnelly v. United States, No. 11-cv-135, 2012 WL 1717217, at *3 (N.D.N.Y. May 15, 2012) (quoting United States v. Forma, 42 F.3d 759, 767, n.13 (2d Cir. 1994)), aff'd, 550 F. App'x 54 (2d Cir. 2014); see also Treas. Reg. § 301.6402-2(b)(1) ("The claim [for a refund] must set forth in detail each ground upon which a . . . refund is claimed and facts sufficient to apprise the Commissioner of the exact basis thereof. . . .  A claim which does not comply with this paragraph will not be considered for any purpose as a claim for refund . . . .").

Hilton's first hurdle in establishing that he has "duly filed" his claim is his failure to comply with the formal requirements of filing a request for a refund.  Hilton filed his request on lines 18e of Form 1040 and 14 of Schedule 3, which is properly used to report any amount of tax a taxpayer paid with a request for an extension to file.  Additionally, Hilton included an explanation of the amount that he disputes his employer improperly withheld using Form 8275, and a "detailed letter . . . setting forth the factual and legal basis for his Refund Claim."  But "Form 8275 is used by taxpayers and income tax return preparers to disclose items or positions that are not otherwise adequately disclosed on a tax return" to avoid penalties.  See Spitz v. Comm'r, 92 T.C.M. (CCH) 121 at *1, n.3 (T.C. 2006).

As a result, Hilton bears the high burden of showing that he has provided sufficiently detailed grounds and facts to apprise the IRS of his refund claim.  See Treas. Reg. § 301.6402-

4

2(b)(1). "The showing should be unmistakable that the Commissioner has in fact been fit to dispense with his formal requirements and to examine the merits of the claim. It is not enough that in some roundabout way the facts supporting the claim may have reached him." Angelus Milling Co. v. Comm'r, 325 U.S. 293, 297 (1945). "The evidence should be clear that the Commissioner understood the specific claim that was made even though there was a departure from form in its submission." Id. at 297-98.

Hilton has not met this burden. First, and perhaps most significantly, Hilton has not demonstrated that he made an overpayment, because he appears to conflate his tax liability with the tax allegedly erroneously withheld by his former employer. In his Form 8275 and the "detailed letter," Hilton requested a "refund attributable to an improper withholding" payment. But a taxpayer's tax liability, and their tax withheld by an employer are not the same.

Taxes withheld by an employer are considered credits that can be used to offset one's tax liability. See 26 U.S.C. § 31. For tax refund purposes, it is largely irrelevant how much an employer withholds in taxes from an employee, provided that the employer remits that amount to the IRS and records it in their Form W-2, and the employee accurately reports their tax liability in their tax return. To illustrate – an employer could hypothetically withhold 100% of an employee's salary and remit that amount to the IRS – so long as the employee reported an accurate amount in *tax liability* in their return, however, the amount withheld would be credited against their liability, and any excess would be refunded to the taxpayer.[1]

Here, rather than reducing his tax liability by $1,713,693 in an amended Form 1040X to reflect his belief that he did not owe that amount, see Treas. Reg. § 301.6402-3(a)(2); Treas. Reg.

---

[1] The "Refund" section of Form 1040 for 2019 is calculated by subtracting a taxpayer's total tax liability from their total payments (including W-2 withholding). As an example – an employee who owed $30 in taxes, but whose employer incorrectly withheld $100 in their W-2, would therefore receive a refund of $70, as long as they accurately reported a tax liability of $30.

5

§ 601.105(e), or simply including that amount on line 17 (the provision for reporting W-2 withholding), Hilton incorrectly recorded that amount as an additional payment on lines 18e of Form 1040 and 14 of Schedule 3 – the provision for reporting tax paid with an extension to file. Accordingly, the IRS disallowed his claim for refund, because it could not verify that he had paid that amount with an extension to file (nor could it, because Hilton only entered that amount in that section due to mistake).

      Hilton argues that the "detailed letter" he submitted along with his tax return nonetheless gave the IRS sufficient information about his request for a refund for it to act on it. As an initial matter, the Government disputes that it ever received this letter. Even assuming the Government did receive the letter, however, the reviewing agent would have had to decide between two conflicting pieces of information – whether to analyze the provisions of Hilton's tax return according to their intended purpose and as reported, or to go against their intended purpose by interpreting the return as described in the letter. And again, in the letter, just as in the Form 8275, Hilton appears to conflate his tax liability with his tax withholding. The agent would presumably have had to infer from the letter that Hilton was requesting a refund for an incorrectly entered tax liability, in which case Hilton's proper recourse would have been to file an amended Form 1040X, or infer from the letter that his tax liability was accurate, but his employer had incorrectly withheld too much in taxes, in which case the proper method of calculating Hilton's refund would be to subtract his tax liability from his total reported payments as reported on his Form 1040. Whether or not the IRS received the letter, the agent appears to have done the latter, and finding no payment with his extension of time to file, denied his claim for $1,713,693. Because Hilton failed to comply with the formal requirements of filing his return, the burden was on him to apprise the IRS of his claim, and faced with this confusing and

6

incorrectly entered information, Hilton has not made an unmistakable showing that the IRS understood his specific claim and examined it on its merits.

Hilton argues, however, that correspondence letters from the IRS show that the IRS understood his request for a refund and examined its merits. He points to the initial disallowance letter, which states that the IRS "couldn't verify the total federal withholding amount reported on [his] tax return," and the IRS's July 2023 letter, which states that the IRS "considered [his] protest and the evidence and arguments submitted in support" of his refund claim.

The Government does not dispute that the IRS reviewed a withholding issue related to Hilton's employer. It contends, however, that the withholding issue was considered regardless of Hilton's request for a refund of $1,713,693 – the amount Hilton alleges was erroneously withheld by his former employer. This is supported by Hilton's Form 1040, which suggests that Hilton was, indeed, eligible for some kind of refund of withholding, regardless of his § 280G arguments. The IRS ultimately resolved the withholding issue in Hilton's favor and returned the "full amount of tax that he could allege was erroneously or illegally collected" – "$56,333 plus interest," but nonetheless denied his request for a refund of $1,713,693, because, as mentioned above, it could not find any record that Hilton had made a payment with an extension to file. Thus, the more likely explanation for the IRS's statements in the correspondence letters is that the IRS, faced with confusing and conflicting information, was unable to understand the specifics of Hilton's arguments except that he was requesting some kind of refund of withholding, and taking his Form 1040 at face value, denied his request.[2]

---

[2] Alternatively, the IRS may have just mistakenly stated that it "couldn't verify the total federal withholding amount." Deposition testimony from the IRS's 30(b)(6) designee suggests that this may be the case. See Kim Tr. at 110:23-111:20; 111:23-112:3 ("I think the IRS had no problem verifying that withholding. . . . I mean, it's not even withholding, but they couldn't find the payment and ended up denying that $1.7 million refund. . . . I don't know why they used the word 'withholding' when they shouldn't. . . . Q. The statement that the IRS couldn't verify the total federal withholding amount reported on your tax return, that's not accurate, is it? A. You are right. The word 'withholding,' it's confusing.").

7

Hilton points to deposition testimony from the IRS's 30(b)(6) designee to show that the IRS understood his request for a refund. According to the testimony, the IRS employee was able to deduce how Hilton calculated his refund amount, when presented with the letter attached to his refund. But the Government disputes that it ever received the letter, and Hilton's argument does not take into account the confusing effect of Hilton's mistake in entering his request for refund as a payment with an extension to file, and his failure to argue that his tax liability, as reported in his Form 1040, was erroneous, or should have been lower. Furthermore, the IRS employee "had no involvement" in the IRS's review of Hilton's return, and therefore, could not have known whether the IRS actually understood and considered his claim.

Lastly, Hilton cites to several cases in which he argues that courts have allowed taxpayers to recover over-withheld taxes despite failing to abide by the formal requirements of a refund claim. Primarily, Hilton argues that the facts of Weisman v. Comm'r, 103 F. Supp. 2d 621 (E.D.N.Y. 2000), are on point. In Weisman, the court found that the taxpayer's Form 1040 and attached letter to the IRS contained sufficient information required to be deemed an informal notice of claim. But in that case, there was no confusion as to the taxpayer's claim – the court found that Weisman had clearly indicated that his employer had withheld more than the amount reflected in his W-2, and that a refund was due. Id. at 628. And the only deficiency in his Form 1040 was his failure to obtain his wife's signature. Id. at 627-628. Here, Hilton still has not alleged that his tax liability as reported was incorrect, only that his former employer withheld more than was required. And his Form 1040 suffers from more than a mere lack of signature – Hilton entered his request for a refund as a payment with extension to file, rather than as a reduction in his tax liability, further complicating his claim.

8

Because Hilton failed to comply with the formal requirements of submitting his request for a refund, the burden was on him to set forth sufficiently detailed grounds and facts to apprise the IRS of his claim. See Treas. Reg. § 301.6402-2(b)(1). Hilton has not met this burden because he has not made an "unmistakable" showing that the IRS understood and examined the merits of his claim. See Angelus Milling Co., 325 U.S. at 297. Consequently, Hilton has not "duly filed" a claim – a prerequisite to waiving sovereign immunity, and the Court must dismiss this case for lack of subject matter jurisdiction.

## CONCLUSION

For the foregoing reasons, the Government's motion to dismiss is granted, and the motion for summary judgment is denied as moot.

**SO ORDERED.**

*Brian M. Cogan*
U.S.D.J.

Dated: Brooklyn, New York
December 15, 2025